NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 0:08-CV-136-HRW

DANNY BURGIN                                                                                          PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

E. K. CAULEY, Warden, et al                                                                 DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Danny Burgin, an individual presently confined at the Federal Prison Camp, in Ashland, Kentucky, originally submitted a *pro se* pleading titled "Motion Pursuant to Title 28 U.S.C. § 2241," together with a Motion to Proceed *in forma pauperis*.

Upon perusal, the Court construed this matter as being a civil action and his initial pleading being a Complaint, as Burgin did not seek release or earlier release but sought relief from a condition being imposed on him by the Bureau of Prisons ("BOP"). The Plaintiff's intent to initiate a civil action now being clear and his Motion to Proceed *in forma pauperis* having been granted, the Complaint is before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

In screening, as with all submissions by *pro se* litigants, the Complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in this Complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is

frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

Plaintiff claims that the BOP's Inmate Financial Responsibility Program ("IFRP"), as imposed on him, violates (1) federal statutes, specifically 18 U.S.C. §§ 3663 and 3664; and (2) the U.S. Constitution, as provided in the Eighth and Fourteen Amendments.

## RELIEF REQUESTED

Plaintiff seeks injunctive relief.

## FACTUAL ALLEGATIONS

Plaintiff has submitted a two-page self-styled Complaint with attached exhibits. The following is a summary of the contents of these documents.

Burgin explains that the BOP's Inmate Financial Responsibility Program, administered and governed by the terms of its Program Statement ("P.S."),[1] requires that prisoners make payments toward their documented financial obligations while in BOP custody. Plaintiff has a child support obligation, which is a debt collectible under the provisions of the IFRP, according to a page of the program statement which he attaches. However, Burgin alleges, he has "refus[ed] to pay the child support that is impossible to pay."

For refusing to cooperate with the IFRP, the Plaintiff has been put in "Refuse Status." According to Burgin, this means that he does not have access to certain prison programs such as

---

[1] Burgin references two program statements, P.S. 5280.07 and P.S. 5380.08, as containing the BOP's policy on and implementation of the IFRP. Research reveals that a number of cases also refer to both, without distinction. *See Rashaad v. Lappin*, 2008 WL 45403 (E.D. Ky. 2008) (only Westlaw currently available). The BOP website contains only P.S. 5380.08. This Court theorizes that P.S. 5380.08 has replaced an earlier version, P.S. 5280.07. Regardless, as the instant Plaintiff attaches a page from P.S. 5380.08, he obviously relies on the latter.

"rehabilitation, education, half-way house, better job placement, sleeping quarters being made difficult, restriction to a point of being cruel and unusual punishment."

Plaintiff sought to be taken off refuse status through the BOP administrative remedy process to no avail. He attaches a copy of only the last response in that process. Exhibit [hereinafter "Ex."] C shows that Plaintiff objected to the amount he would have to pay through the IFRP and asked that his obligation be modified to be only 5% of his wages. The position of the BOP was that the amount was properly set by the process set out in the program statement, Ohio had directed child support in the amount of $43,492.63 and $16, 145.17, "payable immediately," the IRFP does not function with a percentage formula, and courts have upheld the IFRP to constitutional attacks. Finally, Plaintiff was warned that in not complying, he risked "the limitation of certain privileges reflective of a demonstration of poor responsibility." *Id.*

Plaintiff now asks this Court to order that he be "taken off refusal status."

## DISCUSSION

Plaintiff's instant claims are not new ones, there being five (5) federal prisons and additionally, other types of federal detention facilities in the Eastern District of Kentucky, one of which is the prison camp where Burgin is confined in Ashland, Kentucky.

### The Inmate Financial Responsibility Program

In *Sharpe v. Attorney General*, this Court's Case No. 07-CV-116-HRW, the undersigned was presented with another Ashland inmate's challenge to the IFRP as it was being used to set the amount of and collect installment payments toward Sharpe's court-ordered restitution. He alleged that the BOP's actions were: "(1) in contravention of his trial court's Judgment of Conviction; (2) in violation of 18 U.S.C. §§ 3663-3664; (3) thereby exceeding the BOP's authority and usurping that

3

of the Court; and (4) penalizing [Sharpe for refusing] . . . in violation of the Eighth Amendment guarantee of freedom from cruel and unusual punishment." *Sharpe v. Attorney General*, 2008 WL 2246381, at *1.(E.D. Ky. 2008) (unpublished).

Plaintiff's claims echo Sharpe's. As in that case, the Court begins with just what the IFRP is:

> The IFRP is a work program instituted by the Bureau of Prisons to encourage "each sentenced inmate to meet his or her legitimate financial obligations." *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 548 (9th Cir.1998) (quoting 28 C.F.R. § 545.10). The program allows for the development of a financial plan that allows inmates to pay enumerated obligations, such as restitution payments, while incarcerated. *See ibid*. (citing 28 C.F.R. § 545.11).
>
> The IFRP establishes the following process for setting an inmate's payment schedule. (a) Developing a Financial Plan. At initial classification, the unit team shall review an inmate's financial obligations, using all available documentation, including, but not limited to, the Presentence Investigation and the Judgment and Commitment Order(s). The financial plan developed shall be documented and will include the following obligations, ordinarily to be paid in the priority order as listed: (1) Special Assessments imposed under 18 U.S.C. 3013; (2) Court-ordered restitution; (3) Fines and court costs; (4) State or local court obligations; and(5) Other federal government obligations.28 C.F.R. § 545.11(a).

*Id.* at *3 (quoting from *Weinberger v. United States*, 268 F.3d 346, 361 (6th Cir. 2001)). See also P.S. 5380, at page 6, which specifies that a State or local obligation which a prisoner must pay under the IRFP may, indeed, be child support, such as this Plaintiff's.

Although IFRP participation is deemed voluntary, the regulation does provide that an inmate's refusal to comply with his financial plan "shall result" in consequences. 28 C.F.R. § 545.11(d). The regulation contains a list of ten possible consequences, including not receiving a furlough, being assigned the lowest paying jobs, not obtaining bonus pay or vacation pay, being subject to a more stringent monthly commissary spending limitation, being quartered in the lowest housing status, and not being eligible for a community-based program. *Id*.

**Plaintiff's Challenges to the IFRP**

The Court now examines the Plaintiff's claims. The first is his allegation that the BOP is exceeding its authority and violating the federal statutes at Title 18 U.S.C. § 3663-3664. This is what Plaintiff Sharpe claimed in the above-described case regarding the IFRP's use to collect restitution payments ordered by the sentencing court, but the Court did not reach the merits of this claim. The terms of these statutes and their interplay with the IFRP have been discussed elsewhere, however, with varying results. *See Weinberg*, cited *supra*; *United States v. Davis*, 306 F.3d 398, 424-426 (6th Cir. 2002).

In the instant case, however, these statutes are simply irrelevant. Section 3663, *Order of restitution*, and Section 3664, *Procedure for issuance and enforcement of order of restitution*, as their titles suggest, are provisions having to do only with court-ordered restitution, not child support or other financial obligations. The statutes are not applicable to this Plaintiff's child support obligations and are not a valid basis for relief in this case.

Plaintiff's constitutional claims fare no better under scrutiny. These claims, too, have routinely been urged by federal prisoners, and these claims routinely fail. Just last year, in *Rashaad v. Lappin*, E.D. Ky. No. 6:07-CV-408-KKC, this Court examined a prisoner's claim that the IFRP and its penalties violated his rights to due process and to be free of cruel and unusual punishment. Upon screening, however, the Court found that Rashaad's Complaint failed to state a valid claim for relief. *Rashaad v. Lappin*, 2008 WL 45403 (E.D. Ky. 2008) (slip op.).

Burgin's purported Eighth and Fourteenth Amendment claims, like Rashaad's, must fail. As in that case which upheld the IFRP plan, this Court finds that the required IFRP payments and the consequences for non-participation both serve the "valid penological objective of rehabilitation

by facilitating repayment of debts," and are "fully consistent with the BOP's authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation." *Id.* at \*3 (quoting *Johnpoll v. Thornburgh*, 898 F.2d 849, 850-51 (2nd Cir.), *cert. denied*, 498 U.S. 819 (1990)).

The IFRP has not changed, nor has the law.  Just as the *Rashaad* Court observed that "[g]eneral and constitutional challenges to the IFRP have been rejected by other courts as well," and recited decisions upholding the program, including the consequences for non-compliance, this Court again notes  notes the consistency of rulings on this issue and finds no reason to deviate in this case. *See, inter alia*, *United States v. Williams*, 996 F.2d 231, 234 (10th Cir.1993) (restitution orders may be satisfied through IFRP); *Montano-Figuero v. Crabtree*, 162 F.3d 548, 549 (9th Cir.1998), *cert. denied*, 119 S.Ct. 1505 (1999) (IFRP requiring inmate to pay court-imposed fines not unconstitutional); *Muhamad v. Moore*, 760 F. Supp 869, 871 (D.Kan.1991) (IFRP requirements do not violate constitutional rights); *Dorman v. Thornburgh*, 955 F.2 57 (D.C.Cir.1992) (rejecting both the due process and excessive punishment claims of a prisoner who was removed from his work assignment because he refused to participate in the IFRP); *Solis v. Menifee*, 2000 WL 1401633 (S.D.N.Y.2000) (not reported) (rejecting prisoner's claims that IFRP, used to collect payment of a government fine, violated due process and was coercive and involuntary).  *See also Johnpoll*, 898 F2d at 851 ("The Bureau of Prisons has not exceeded its statutory authority, nor departed from its own regulations, by administering a program to collect court ordered civil judgments or fines").

Burgin suggests that he *cannot* pay the amount set in his IFRP financial plan, but he fails to demonstrate that he cannot pay and was forced to "refuse status" because of his inability to make the payments.  In fact, he does not reveal what the IFRP-calculated amount is.  How then, can he

state a claim that the amount is burdensome? Nor does Plaintiff claim that the amount is wrongly calculated under the terms of Program Statement 5380.08 at page 8. The financial information which he submitted in order to proceed *in forma pauperis* herein shows that for a recent 6-month period, $85.25 was deposited to his inmate account monthly. This amount is totally at his disposal, as his living expenses are paid by the American taxpayer. His suggestion that he make IFRP payments of only 5% of his wages is hardly reflective of his accepting responsibility for his debt.

In short, the Plaintiff has failed to state a claim upon which the Court may grant relief, and his Complaint will be dismissed, without prejudice.

## CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED**, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This April 8, 2009.



Signed By:
Henry R Wilhoit Jr.
United States District Judge